Fred W. Schwinn (SBN 225575)
CONSUMER LAW CENTER, INC.
12 South First Street, Suite 1014
San Jose, California 95113-2418
Telephone Number: (408) 294-6100
Facsimile Number: (408) 294-6190
Email Address: fred.schwinn@sjconsumerlaw.com

Attorney for Plaintiff
RAYMOND CHARLES MEYER

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| RAYMOND CHARLES MEYER,<br><br>                    Plaintiff,<br><br>v.<br><br>ARS NATIONAL SERVICES, INC., D/B/A ASSOCIATED RECOVERY SYSTEMS, a California corporation, and JASON A. HOWERTON, individually and in his official capacity,<br><br>                    Defendants. | Case No. C07-06422-JF-PVT<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES AND COSTS**<br><br>Judge:         Honorable Jeremy Fogel<br>Courtroom:  3, 5th Floor<br>Place:          280 South First Street<br>                    San Jose, California |

COMES NOW the Plaintiff, RAYMOND CHARLES MEYER, by and through counsel Fred W. Schwinn of the Consumer Law Center, Inc., and hereby submits his Memorandum in Support of Motion for Attorney Fees and Costs.

**INTRODUCTION**

Fee petitions of prevailing parties should not result in a "second major litigation"[1], yet, in experience of Plaintiff's counsel (and probably in Court's experience as well) they almost inevitably end up being just that.

**FACTS OF THE CASE**

This case was brought by RAYMOND CHARLES MEYER (hereinafter "Plaintiff") against

---

[1] *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983).

-1-

a debt collection agency, ARS NATIONAL SERVICES, INC., d/b/a ASSOCIATED RECOVERY SYSTEMS (hereinafter "ARS"), and JASON A. HOWERTON (hereinafter "HOWERTON") (hereinafter collectively "Defendants").  Plaintiff alleged various violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (hereinafter "FDCPA") and the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788, *et seq*. (hereinafter "RFDCPA"), which prohibit debt collectors from engaging in abusive, deceptive and unfair practices.  Plaintiff sought statutory damages, attorney fees and costs under both the FDCPA and RFDCPA.

This case arose out of a series of telephone answering machine messages and debt collection letters that were sent to Plaintiff by Defendants.  The debt being collected stemmed from a credit card account issued by CitiBank (South Dakota), N.A., that was used for personal, family or household purposes.  Plaintiff alleged that Defendants violated the FDCPA and the RFDCPA by continuing to communicate directly with Plaintiff regarding the collection of the debt owed to CitiBank (South Dakota), NA., after receiving a letter from Plaintiff disputing the debt and refusing to pay the debt.  Defendants further violated the FDCPA and RFDCPA by failing to disclose their identity and the nature of their business, and failing to disclose that the communications were from a debt collector in their answering machine messages.

## PROCEDURAL HISTORY

On December 20, 2007, Plaintiff filed his Complaint in this case alleging violations of the FDCPA and RFDCPA. (Doc. 1)  On February 28, 2008, both Defendants filed their respective and separate Answers.  (Docs. 6 and 7)  On March 20, 2008, Defendants served ARS National Services Inc.'s Rule 68 Offer of Judgment, which offered Judgment be taken against Defendant in the amount of $2,000.00, plus reasonable attorneys fees and taxable costs to be negotiated by the parties, or in the alternative, to be decided by motion.  On April 2, 2008, Plaintiff filed a Notice of Acceptance of Offer of Judgment.  (Doc. 11)

On May 13, 2008, this Court issued an Entry of Judgment in favor of Plaintiff pursuant to the terms of Defendant's Rule 68 Offer of Judgment. (Doc. 15)  Judgment was granted for Plaintiff in the amount of $2,000.00.  The Court ordered that Plaintiff submit a Motion for Attorney's Fees and Costs within 15 days.

Thereafter, Plaintiff filed his <u>Motion for Attorney Fees and Costs</u> on May 27, 2008, in accordance with the Judgment entered by this Court. This Memorandum of Law is submitted in support thereof.

**SUMMARY OF ARGUMENT**

A.    Plaintiff is Entitled to a Full Award of His Attorney Fees and Costs.

B.    Plaintiff's Attorneys' Fees Are to Be Awarded Pursuant to the Lodestar Formula.

C.    The Laffey Matrix Supports the Reasonableness of the Requested Hourly Rate.

D.    The *Kerr* Factors Support the Reasonableness of the Requested Fee.

E.    Plaintiff is Entitled to a Supplemental Award of Attorney Fees for the Time Expended upon This Motion.

**STATEMENT OF QUESTION PRESENTED**

What is the amount of reasonable attorney fees and costs that should be awarded to the Plaintiff?

**ARGUMENT AND AUTHORITIES**

**A.    Plaintiff is Entitled to a Full Award of His Attorney Fees and Costs.**

This case was resolved when Defendants offered have Judgment taken against them in the amount of $2,000.00 plus an additional amount to reasonably compensate Plaintiff for his attorney's fees and costs. Plaintiff now seeks his reasonable attorney's fees and reasonable costs accrued in this matter.

**B.    Plaintiff's Attorneys' Fees Are to Be Awarded Pursuant to the Lodestar Formula.**

The U.S. Supreme Court has explained the calculation for an award of attorney's fees:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.[2]

Although this decision, and others cited hereinafter, arise in the context of the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, these criteria are equally applicable here. "The

---

[2] *Hensley v. Eckerhart*, 461 U.S. at 433.

-3-

standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"[3] "We have stated in the past that fee-shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike."[4]

The "Lodestar" Formula

"In the Ninth Circuit, the customary method of determining attorney fees is the 'lodestar method.' The court calculates the "lodestar" amount by multiplying the number of hours the prevailing party reasonable expended in the litigation by a reasonable hourly rate."[5]

Reasonable Hours Spent

In order to determine the reasonable number of hours spent on the litigation, courts require that "an attorney seeking a fee award must support her/his claim of hours worked by submitting detailed time records."[6] Plaintiff's counsel has maintained "detailed time records."

Counsel's time records were made contemporaneously with the work being preformed. In addition to being meticulous in their detail, Plaintiff's counsel have avoided "block billing" in their time records—discrete tasks are broken down and listed individually and not lumped in with other tasks. Finally, counsel's time records reveal, through the use of initials, each person for whom fees are sought and the hours of compensation requested. Copies of Plaintiff's counsel's billing summaries are attached to the Declaration of Fred W. Schwinn and filed herein.

Reasonable Hourly Rate

> While "[w]e . . . recognize that determining an appropriate 'market rate' for the services of a lawyer is inherently difficult," *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984), the established standard when

---

[3] *Id.* at n.7.

[4] *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754, 759 n.2, 109 S. Ct. 2732, 105 L. Ed. 2d 639 (1989) (*quoting Northcross v. Memphis Bd. of Education*, 412 U.S. 427, 428, 93 S. Ct. 2201, 37 L. Ed. 2d 48 (1973)).

[5] *Ruby v. Invictus Franchising, Inc.* 2001 U.S. Dist. LEXIS 22320 at *2, (Dist. of Oregon 2001) (*citing Morales v. City of San Rafael*, 96 F.3d 359, 393 (9th Cir. 1996)) (citations omitted); *See also Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987).

[6] *Peake v. Chevron Shipping Co.*, 2004 US Dist. LEXIS 15564 at *25, (N.D. Cal. 2004) (citing *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987)).

determining a reasonable hourly rate is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997) (internal quotation marks omitted).[7]

The focus must be on the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."[8] "The relevant community is the forum in which the district court sits."[9] In this case the relevant community is the San Francisco Bay Area. Plaintiff has provided the Court with competent and trustworthy evidence of the San Francisco Bay Area attorney fee market in the form of declarations of his counsel and two other San Francisco Bay Area attorneys. "The court may not use its own knowledge to establish the appropriate rate unless the evidence of prevailing market rates before the court is inadequate."[10] The declarations submitted by Plaintiff are adequate and trustworthy evidence of the market rate for comparable attorneys in the San Francisco Bay Area. "A district court abuses its discretion when it ignores the parties' market evidence and sets an attorney's hourly rate using the rates it consistently grants."[11]

Attorney's Rate

The Consumer Law Center, Inc., herewith submits the Declaration of Fred W. Schwinn. Based on his personal experience and the rates that he charges fee paying clients, this Declarant believes that requested hourly rate of $300.00 is entirely fair and reasonable given market rates for representation of consumers in debtor-creditor litigation.

Total "Lodestar" Fees Requested

In total Plaintiff requests the following attorney fees based on the "Lodestar" formula:

---

[7] *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008).

[8] *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997).

[9] *Id.* at 500.

[10] *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000) (*quoting Case* v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1257 (10th Cir. 1998)) and *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987)).

[11] *Id.* (*citing Case*, 157 F.3d at 1255).

-5-

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES            Case No. C07-06422-JF-PVT

| Name | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Fred W. Schwinn | Attorney | 13.7 | $ 300.00 | $4,110.00 |
| Heather Murdock | Paralegal | –0– | $ 95.00 | $    –0– |
| | | | | $4,110.00 |

**C.    The Laffey Matrix Supports the Reasonableness of the Requested Hourly Rate.**

The Laffey Matrix represents an attempt by the courts to develop an objective approach to calculate the appropriate hourly rate for fee awards.[12] In *Laffey* the plaintiffs submitted, "a barrage of data, including twenty-five attorney affidavits secured specifically for [the] litigation, information gleaned from affidavits filed in other cases, and fee data reflected in previous judicial decisions" in support of their requested hourly rate.[13] From that data, the *Laffey* Court created a matrix intended to show the prevailing rates for lawyers of given levels of experience and competence.[14] This matrix is commonly referred to as the Laffey Matrix.

The current Laffey Matrix may be found at http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_7.html.  According to the Department of Justice website, the Matrix is adjusted annually to reflect the effects of inflation.  "The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5."[15]

The Laffey Matrix has been used by this Court in determining the appropriate hourly rate for attorney fees in the San Francisco Bay Area.[16]  This Court, however, noted that the rates in the Laffey Matrix applied to the District of Columbia, rather than the San Francisco Bay Area.  In order to resolve this impediment, this Court adjusted the figures to more accurately reflect the differential

---

[12] *In re HPL Techs, Inc.*, 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005).

[13] *Laffey v. Northwest Airlines*, 572 F. Supp. 354, 371-72 (D.C. Dist. 1983) (aff'd in part, rev'd in part on other grounds, *Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4 (D.C. Cir. 1984)).

[14] *Id.* at 372.

[15] Laffey Matrix 2003-2008, Explanatory note 3 at http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_7.html.

[16] *In re HPL Techs., Inc.,* 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005).

cost of living between the District of Columbia and the San Francisco Bay Area.[17] This Court concluded that the, "Washington-Baltimore area has a +15.98% locality pay differential; the San Francisco-Oakland-San Jose area has a +26.39% locality pay differential. Thus, adjusting the Laffey Matrix figures upward by approximately 9% will yield rates appropriate for the Bay area."[18] Using this adjustment, this Court in 2005 found that "attorneys with 8-10 years of experience bill $305/hour."[19] In 2008 the Laffey rate has increased to $345/hour. Plaintiff notes that this is also consistent with recent fee awards in this District even in cases that have not relied on the Laffey Matrix.[20]

### D. The *Kerr* Factors Support the Reasonableness of the Requested Fee.

Once the Lodestar calculation of attorney's fees should be adjusted, the Court may "adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation."[21] The *Kerr* factors are (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases."[22] Analysis under the *Kerr* factors indicates that the Lodestar figure requested in this matter is

---

[17] *Id.* (Locality pay differential tables are currently available at http://www.opm.gov/oca/05tables/indexGS.asp).

[18] *Id.*

[19] *Id.*

[20] *See Navarro v. General Nutrition Corp*, 2004 U.S. Dist. LEXIS 24258, at *10-*11 (N.D. Cal. 2004), (attorney with 10 years experience awarded $325).

[21] *Morales. v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 2004).

[22] *Id.,* note 8.

-7-

reasonable without adjustment.

1.  <u>The novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly, and the time and labor required.</u>

Even if the case is straightforward, the lodestar amount may not be reduced.[23] Additionally, Plaintiff's counsel has a small law firm and does much of his work on his own. As stated in *Bailey v. District of Columbia*,[24]

> . . . attorneys, like plaintiff's counsel, operating either as solo practitioners or in small firms, often lack the resources to retain a large staff of junior lawyers who could handle [certain more clerically related] tasks more economically. Denying plaintiffs compensation for these tasks would unfairly punish plaintiffs and their counsel for not staffing this case as if they had the manpower of a major law firm.

2.  <u>The preclusion of other employment by the attorney due to acceptance of the case</u>.

The time spent on this case was not, and could not be, spent at the same time on other cases.

3.  <u>The customary fee</u>.

Plaintiff's fee request is well within the range of similar work before this Court and is the customary hourly rate charged by Mr. Schwinn for his clients. The market rate in the San Francisco Bay Area for federal litigation of consumer law issues that are similar in difficulty and complexity to the issues herein is a range extending from $275 to $500 per hour, depending on the skill, experience and reputation of the attorney. The requested hourly rate of $300.00 for Mr. Schwinn is entirely fair and reasonable, given his experience, qualifications and expertise in the representation of consumers.[25]

4.  <u>Whether the fee is fixed or contingent</u>.

Here, as in most all cases under the Consumer Credit Protection Act, the fee is contingent

---

[23] *DiFillippo v. Morizio*, 759 F.2d 231, 235 (2nd Cir. 1985); *See Hughes v. Repko*, 478 F.2d 483, 491 (3rd Cir. 1978) (Judge Garth concurring: "To reduce the fee award in a case where there is a strong likelihood of success makes little sense. Such a reduction unfairly penalizes the attorney who is employed to prosecute a case where the constitutional or statutory violation is clear.").

[24] 839 F. Supp. 888, 891 (D.D.C. 1993).

[25] See Expert Declaration of Ronald Wilcox in Support of Plaintiff's Motion for Attorney Fees and Costs ¶ 8; See Expert Declaration of Scott Maurer in Support of Plaintiff's Motion for Attorney Fees and Costs ¶ 9.

-8-

1 – not on the amount of damages, but by award of the Court or agreement of opponent. In a private
2 attorney general case such as this, Congress encourages counsel to bring suit, recognizing that
3 counsel cannot charge the client an hourly fee (and that counsel must be paid from the recovery),
4 because the fee may be out of proportion to the recovery.

5 If contingent, the fee award should compensate counsel for the risk of receiving no
6 compensation.[26] Moreover, it should permit counsel "to earn an income that would be competitive
7 with colleagues who get paid win or lose."[27]

8 "A contingent fee must be higher than the fee for the same legal services as they are
9 performed. The contingent fee compensates the lawyer not only for the legal services he renders,
10 but also for the loan of those services. The implicit interest rate on such a loan is higher because the
11 risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher
12 than that of a conventional loan."[28]

13     5.    <u>The time limitations imposed by the client or by the circumstances</u>.
14 No time limitations existed in this case except reasonableness.
15     6.    <u>The amount involved and the results obtained</u>.

16 Here, plaintiff obtained $2,000 under the Judgment. The fact that the amount involved is
17 relatively small does not diminish Plaintiff's right to full recovery of attorney's fees and
18 disbursements.

19 "[C]ourts generally will not look to the size of the damage award in determining a reasonable
20 attorney's fee in consumer cases."[29] Because the statute itself limits damages, the amount of

---

[26] *See, e.g., Blum v. Stenson*, 465 U.S. 886, 903 (1984)(Brennan, J., concurring); *Fabri v. United Techs Int'l, Inc.*, 193 F. Supp. 2d 480, 486 (D. Conn. 2002).

[27] *Bayless v. Irv Leopold Imports, Inc.*, 659 F. Supp. 942, 944 (D. Ore. 1987)(odometer case)(*citing Blum*, 465 U.S. at 903 (Brennan, J., concurring).

[28] Posner, <u>Economic Analysis of Law</u>, 534, 567 (4th ed. 1992).

[29] *Smith v. Chapman*, 436 F. Supp. 58, 66 (W.D. Tex. 1977).

1  damages awarded does not justify a reduction in the lodestar amount.[30]

2  Courts have routinely rejected the "proportionality" argument as the basis for a fee award
3  in fee-shifting cases, where consumers' rights are being vindicated under consumer protection
4  statutes, civil rights laws, and the like.[31]

5  In a Consumer Credit Protection Act case such as this one, the award is often limited by
6  statute. "There is little reason to look to the limited award of statutory damages to determine the
7  reasonableness of attorney's fees which are generated by the unlimited costs of litigation."[32]

8      7.    <u>The experience, reputation and ability of the lawyer or lawyers performing the services</u>.
9

10  Plaintiff's counsel knows of very few attorneys who purport to be able to litigate plaintiffs'
11  Consumer Credit Protection Act. Most attorneys do not recognize the legal issues involved in such
12  cases, and requests for representation are generally turned away by members of the Bar. There are
13  only a handful of San Francisco Bay Area attorneys who are willing to accept Fair Debt Collection
14  Practice Act cases because of the special expertise required and the risk of nonpayment. The failure
15  to adequately compensate consumer law plaintiffs has an effect on the ability of consumers to obtain
16  adequate legal representation for meritorious claims.

17      8.    <u>The nature and length of the professional relationship with the client</u>.

18  Oftentimes, where a party has a lengthy professional relationship with a client, the client
19  negotiates a "volume discount" for legal services. Not so here. In this case, Plaintiff is not a
20  "volume" client. However, the attorney has represented this client throughout his bankruptcy case.

21      9.    <u>The undesirability of the case</u>.

22  Consumer cases are often particularly undesirable to other practitioners for many reasons.

---

[30] *Cowan v. Prudential Ins. Co.*, 935 F.2d 522, 527 (2nd Cir. 1991).

[31] *See, e.g., City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986)(and cases cited therein).

[32] *Postow v. Oriental Bldg. Ass'n*, 455 F. Supp. 781, 791 (D.D.C. 1978). *See also Bittner v. Tri-County Toyota*, 569 N.E.2d 464, 466 (Ohio S.Ct. 1991)(the remedial/consumer protection purpose of the statute is undermined if relatively small dollar amount case cannot fully compensate the attorneys who take them on.)

1  They are very often labor-intensive to obtain the requisite proof to win the case.  The results are
2  especially uncertain and taking them poses risks upon the practitioner.  It becomes very difficult for
3  consumers to vindicate their rights under consumer protection statutes as a result, especially where
4  small amounts of money are involved. It is not uncommon for defendants in consumer cases to spend
5  a lot of time and money vigorously defending the case.  Compensation is both contingent upon
6  success and deferred until after the end of the case – when (and if) it is collected from the defendant.
7  For these reasons, consumer protection plaintiffs' cases are not, for the most part, attractive cases
8  to most practitioners.   The vast majority of other attorneys simply will not take these cases.

9  For the time spent representing the Plaintiff in this matter, the Consumer Law Center, Inc.,
10  requests attorney fees in the amount of $4,110.00 and costs and expenses in the amount of $559.60.

11  **E.    The Purpose of the Award Is To Enforce Consumer Protection Statutes**

12  Attorneys are central to the enforcement of both the Consumer Credit Protection Act (of
13  which the FDCPA is a part) and the California Rosenthal act, by private attorneys general. "The
14  value of an attorney's services is not only measured by the amount of the recovery to the plaintiff,
15  but also the non-monetary benefit accruing to others, in this case the public at large from this
16  successful vindication of a national policy to protect consumers from fraud in the used car
17  business."[33]

18  Such fees are particularly important in consumer cases, under the principles discussed by the
19  Supreme Court in *Rivera*, supra, a civil rights case.  "The public interest . . . is not limited to those
20  cases that push the legal envelope; it is perhaps most meaningfully served by the day-to-day private
21  enforcement of these rights, which secures compliance and deters future violations. Congress meant
22  reasonable attorney's fees to be available to the private attorneys general who enforce the law."[34]
23  California courts have likewise recognized this principle in awarding fees under consumer protection
24  laws.

25  All of these same policy reasons exist in the context of consumer laws against Defendants

---

[33] *Fleet Inv. Co. v. Rogers*, 620 F.2d 792, 794 (10th Cir. 1980)(odometer law case).

[34] *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426, n.7 (2nd Cir. 1998).

1  and other debt collectors who violate the law. The cost and fee award encourages injured
2  individuals to pursue their claims. The individuals then act as "private attorneys general" enforcing
3  not only their own rights, but those of all citizens. Private actions act as a supplement to the public
4  enforcement actions which may be brought against Defendants by state regulatory agencies.
5  Hopefully, the policy of deterrence will be effectuated by a full award of costs and fees as well,
6  causing Defendants to hesitate to violate the law in the future.

7  Moreover, Defendants chose to "fight" over fees, obviously either in the hopes of trying to
8  reduce the amount to which Plaintiff is entitled, or to cause unnecessarily Plaintiff to expend even
9  more attorney's fees in litigating the fee petition, or both. The Court should not encourage either
10  motive by reducing the fee award.

11  A defendant should not be encouraged to litigate in the expectation that the Court will reduce
12  the plaintiff's fee request, even though the defendant's fees to its own attorney are not similarly
13  scrutinized and reduced by the Court.[35]

14  An inadequate award diminishes the inducement created by fee-shifting statutes, and
15  undermines the goal of promoting private representation in FDCPA actions. An award should be
16  made at a rate which recognizes the vindication of public policy expressed in the FDCPA. "The
17  award of attorney's fees, as a practical matter, is a critical and integral part of [the creation of a
18  system of private attorneys general.]."[36]

19  **F.    Plaintiff Is Entitled to a Supplemental Award of Attorney Fees and Costs for the Time Expended upon this Motion.**
20

21  The Declaration submitted by Plaintiff's attorneys detail the time expended in this litigation
22  through May 27, 2008. Any additional time expended preparing a Reply brief or attending any
23  hearing that the Court should decide to schedule will be submitted when the work of Plaintiff's
24  counsel is completed. An award of fees is appropriate for the time expended in pursuing a motion

---

[35] *See also Eddy v. Colonial Life Ins. Co.*, 59 F.3d 201, 207-08, (D.C. Cir. 1995)(a fee award deters noncompliance with the law and encourages settlement).

[36] *James v. Home Constr. Co.*, 689 F.2d 1357, 1359 (11th Cir. 1982).

-12-

for award of attorney fees.[37] "This Circuit allows the recovery of attorney's fees for time spent preparing and filing a motion for attorney's fees and costs."[38] After completion of briefing and oral argument Plaintiff's counsel should be allowed leave of this Court to submit a Supplemental Declaration Supporting any additional attorney fees and costs.

## CONCLUSION

Based upon the Lodestar calculation, reasonable attorney fees and costs should be awarded to Plaintiff in the amount of $4,669.60. A supplemental award of attorney fees should be made to compensate Plaintiff for any additional attorney time expended on this matter. A proposed Order is attached for the Court's use.

Dated: May 27, 2008                                 CONSUMER LAW CENTER, INC.

                                                    By: /s/ Fred W. Schwinn
                                                        Fred W. Schwinn, Esq.
                                                        Attorney for Plaintiff
                                                        RAYMOND CHARLES MEYER

---

[37] *Haitian Refugee Center v. Meese*, 791 F.2d 1489, 1500-01 (11th Cir. 1986).

[38] *Cancio v. Financial Credit Network, Inc.*, 2005 U.S. Dist. LEXIS 13626, *16 (N.D. Cal. July 6, 2005) *citing*, *Jordan v. Multnomah County*, 815 F.2d 1258, 1264 (9th Cir. 1987); *Rosenfeld v. S. Pac. Co.*, 519 F.2d 527, 530 (9th Cir. 1975).